Pontius, J.
Plaintiffs upon behalf of themselves and others, all members of the Canton local of the Socialist party, filed a petition in this court against the city of Canton, Charles A. Stolberg, as mayor of the city of Canton, Jesse A. IStarrett, as director of public service of the city of Canton, Rufus J. Kunkel, as director of public safety of the city of Canton, and Charles N. Riblet, as chief of police of the city of Canton, alleging in substance that a contract had been made by plaintiffs with the city of Canton for the use of the city auditorium for tonight, September 19, 1917; that Dr, Scott Nearing, of Toledo, Ohio, has been engaged by them *189 to lecture there this evening, and that plaintiffs have expended large sums of money in employing said speaker and in advertising such meeting. Plaintiffs also allege that the defendants threaten to and will, unless restrained by this court, stop said lecture and prevent plaintiffs and the Socialist party from conducting said meeting as arranged for, not for the purpose of preventing disturbance or disorder, but "solely for the purpose of preventing and hindering the political activities of the plaintiffs and of the Socialist party and depriving them of their right of peaceable assembly, free speech, dissemination of the theories of Socialism and of other rights and privileges guaranteed by the laws and Constitution of the state of Ohio and of the United States.”
Plaintiffs ask that an order be issued restraining defendants and each of them from "stopping, preventing or in any way interfering with the holding of said meeting,” and that by order of this court defendants or their agents be compelled to open the doors of said city auditorium for said meeting.
This application amounts to an application for a permanent order, inasmuch as it involves matters to take place this evening.
Plaintiffs claim that a contract was made, with the city for the use of the auditorium. It is unnecessary that I determine the right of the plaintiffs to a mandatory order requiring the opening of the auditorium for the meeting, because the officers of the city, the defendants, came before the court, admitted that such contract was made and said that the doors of the auditorium would be opened and the building would be made ready for the meeting, and I shall expect to hold them to their statements here, although I will not issue a mandatory order. Mr. Solicitor, I shall expect you to see that the doors of the auditorium are open unless something arises between now and this evening requiring the closing of the doors.
Plaintiffs ask, however, that a restraining order issue, restraining the defendants, their agents and the police of the city of Canton and any city official from stopping or interfering in any way with said meeting after it is onee begun, claiming that these defendants and especially the director of public safety *190 has threatened to- and will, unless enjoined, stop the speaker if certain subjects are discussed, and that this will.be done,'not for the purpose of preventing disturbance or disorder, but solely for the purpose of preventing and hindering the political activities of plaintiffs and the party they represent, etc.
This application was heard on oral testimony. From that testimony I find that the director of safety did tell plaintiffs and their attorney that, if the subject of the draft law was discussed and criticism of the action of Congress in respect to such law was made, that he would stop the speaker. I also, find from this testimony that said safety director threatened to stop the speaker only when in his judgment seditious or treasonable utterances were made or statements were made tending to disturb the peace and good order of the city. There is no proof and I could not find 'from this testimony that the director of safety,' or any of the other city officers,, defendants here, threaten to and will, unless enjoined, interfere with the'speaking tonight for the purpose only of preventing the political activities of the plaintiffs and of depriving them of their right of peaceable assembly, free speech, etc. Counsel for plaintiffs infers this because of the threats made by - the safety director but, as a matter' of fact, this inference is not supported by the proof.
Finding these facts as I do, this case is so plain a case that it hardly needs discussion.
It is undoubtedly true, however, that under the Constitution of the United States and of the state of Ohio, the people have the right of peaceable assembly and the right of free speech. Section 11 of Article I of the Constitution of the state of Ohio provides that every citizen may freely speak, write and publish his- sentiments on all 'subjects, being responsible for the abuse of the right.”
Nevertheless, can one make any statements he chooses to -make ill a speech' and compel the' authorities of a city, in control of that department of the city government, having the duty-resting upon them;of keeping peace and good order, to remain siientlttirtil such, statements, are fully completed and then -hold the -'speaker" '“responsible' for' the abuse of the right,” Ar may *191 these officers of the law, when in their judgment an utterance is made which tends to disturb the peace and order, immediately stop the speaker ?
. What plaintiffs really object to, as shown by the evidence and argument of counsel, is that the director of public safety and the .police officers of the city may act as censors of what they call “free speech.”
As defendants, here we have the mayor, the director of public service, the director of public safety and the chief of police of our city, all officers of the law the same as this court is an officer of the law. Clearly, among the duties of these defendants- is that they maintain peace and order .in the city. If they are of the opinion that during the discussion at the auditorium tonight statements are made which the public safety and good order of the city require .should be stopped, in my judgment, it is not only their .right but their duty to interfere with the speaker and stop him entirely if they deem it necessary: And what I say of them also applies to any one of them.
True, plaintiffs say that in the discretion of these men they should not be censors of the speech to be made tonight, yet they are legal officers, they are the ones in authority in this city clothed with the duty of keeping the public peace of the city and if, in their discretion, they are of the opinion that a discussion of the draft law will cause public disorder, in my judgment, they may end the discussion.
That a court can not control public officers in their discretion in matters of this kind is well settled and needs no citation of authorities, and if I would issue the order asked for I would, in my judgment, be seeking to control them in the exercise of their discretion.
'The authorities presented to me by counsel for plaintiffs have been carefully considered, except one or two cases not found in our law library. None of the cases are precedents for this application here. Take the Michigan case cited, 73 Mich., p. 288, and reading from the syllabus, “Under our Constitution and under our government the object and aim is to leave the subject entire master of his owm conduct, except in the points wherein *192 the public good requires some discretion or restraint.” That is, a citizen can act and speak as he chooses except where public good requires restraint. Who is to determine when the acts or words of one require restraint for the public good? Surely no other than officers such as the defendants in this ease. This court has no more power to restrain them from doing what they think right in order to preserve the peace and order of our city than' they, or any one of them, have to tell me how I should decide this or any other case.
I realize that the gentleman who is scheduled to speak tonight is one of your most learned Socialists and yet, if the public officers of this city are of the opinion that he' is saying things that will create disorder and trouble among the people of this community, in my judgment they have the right to interfere and stop him. In my judgment a court of equity, if conditions were only ordinary at this time in this country, would not interfere with 'the civil authorities in maintaining order in any manner they saw fit. Our Congress has declared war and I am of the opinion, and honestly of that opinion, that any court of equity that would grant an order interfering with the officers of the civil law, restraining them from acting in matters within their discretion for the purpose of preserving peace and order, ought to be removed from office. I even think he ought to be impeached and I am just as sincere in my views as plaintiffs and their counsel are sincere in their advocacy of the right of free speech.
No restraining- order will be granted and plaintiffs may have an exception.